**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

NORA L. COLLINS, widow of Johnnie
J. Collins,
                    *Petitioner,*

            v.

POND CREEK MINING COMPANY;
DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR,
                    *Respondents.*

No. 05-1832

On Petition for Review of an Order
of the Benefits Review Board.
(04-899-BLA)

Argued: May 24, 2006

Decided: November 8, 2006

Before KING and SHEDD, Circuit Judges, and
Joseph R. GOODWIN, United States District Judge for the
Southern District of West Virginia, sitting by designation.

---

Petition for review granted; order vacated and remanded by published
opinion. Judge King wrote the majority opinion, in which Judge
Goodwin joined. Judge Shedd wrote a dissenting opinion.

---

## COUNSEL

**ARGUED:** Leonard Joseph Stayton, Inez, Kentucky, for Petitioner.
Douglas Allan Smoot, JACKSON & KELLY, P.L.L.C., Charleston,

West Virginia, for Respondent Pond Creek Mining Company; Rita A. Roppolo, UNITED STATES DEPARTMENT OF LABOR, Office of the Solicitor, Washington, D.C., for Respondent Director, Office of Workers' Compensation Programs. **ON BRIEF:** Kathy L. Snyder, JACKSON & KELLY, P.L.L.C., Charleston, West Virginia, for Respondent Pond Creek Mining Company; Howard M. Radzely, Solicitor of Labor, Patricia M. Nece, Counsel for Appellate Litigation, UNITED STATES DEPARTMENT OF LABOR, Office of the Solicitor, Washington, D.C., for Respondent Director, Office of Workers' Compensation Programs.

---

**OPINION**

KING, Circuit Judge:

Nora Collins ("Mrs. Collins") petitions for review of the 2005 Decision and Order of the Benefits Review Board (the "BRB") denying her claim for survivor's benefits under the Black Lung Benefits Act, 30 U.S.C. §§ 901-945 (the "Black Lung Act" or the "Act"). In so doing, Mrs. Collins contends, inter alia, that the BRB and the Administrative Law Judge (the "ALJ") erroneously failed to accord collateral estoppel effect to an earlier ALJ's 1988 ruling that her late husband suffered from pneumoconiosis as a result of his work in the coal mines of southern Appalachia. As explained below, we agree with Mrs. Collins that the BRB erred in 2005 by not according preclusive effect to the 1988 ALJ ruling. We grant her petition for review, vacate the 2005 BRB Decision and Order, and remand.

I.

Mrs. Collins's late husband, Johnny Collins ("Mr. Collins"), worked underground in the coal mines of southern West Virginia and eastern Kentucky for over thirty-six years. During his extensive mining career, Mr. Collins, inter alia, operated a cutting machine, a motor, and a loading machine; worked on "the belt"; laid track; loaded coal; and worked as a belt repairman. On February 25, 1988, Mr. Collins was awarded benefits under the Black Lung Act by Decision and Order of an ALJ. *Collins v. Pond Creek Coal Co.*, No. 85-

BLA-5349 (Feb. 25, 1988) (the "1988 ALJ Decision"). In that proceeding, the Pond Creek Coal Company ("Pond Creek") was named as the responsible operator.[1] The 1988 ALJ Decision was premised on the ALJ's findings that Mr. Collins had established, by a preponderance of the evidence, that (1) he had pneumoconiosis (commonly known as "black lung disease"); (2) he was totally disabled; and (3) his total disability was due to pneumoconiosis. As a result of the 1988 ALJ Decision — from which Pond Creek did not appeal — Mr. Collins received black lung benefits until his death on September 16, 1997.[2]

On September 29, 1997, Mr. Collins's widow filed a claim for survivor's benefits under 30 U.S.C. § 922(a)(2), naming Pond Creek as the responsible operator. In order to be entitled to benefits, Mrs. Collins was obliged to show that (1) she was Mr. Collins's widow, (2) Mr. Collins suffered from pneumoconiosis as a result of his coal mine employment, and (3) pneumoconiosis hastened his death. *See* § 922(a)(2) (providing that coal miner's widow can receive benefits if miner's death was "due to pneumoconiosis"); 20 C.F.R. § 718.205(c)(2) & (5) (providing that miner's death is "due to pneumoconiosis" if pneumoconiosis "hastens the miner's death"). And, in establishing that Mr. Collins had developed pneumoconiosis as a result of working in the coal mines for thirty-six years, Mrs. Collins asserted that she was entitled to rely on the collateral estoppel effect of the 1988 ALJ Decision.

By Decision and Order of December 21, 2001, the ALJ denied

---

[1]Although the responsible operator in the 1988 ALJ proceeding was referred to as "Pond Creek Coal Company," the responsible operator in this proceeding is "Pond Creek Mining Company." There is no contention that the two companies are in any way distinct, and we treat them as one entity, which we simply call "Pond Creek."

[2]Pursuant to the Black Lung Act, a coal miner who is totally disabled by pneumoconiosis "shall be paid benefits during the disability at a rate equal to 37 1/2 per centum of the monthly pay rate for Federal employees in grade GS-2, step 1." 30 U.S.C. § 922(a)(1). Under the applicable 2006 Salary Table, a Federal employee in grade GS-2, step 1, receives a base salary of $18,385 per year, and a miner totally disabled by pneumoconiosis therefore receives approximately $575 per month in black lung benefits.

Mrs. Collins's claim for survivor's benefits. *Collins v. Pond Creek Mining Co.*, No. 1998-BLA-1295 (Dec. 21, 2001) (the "2001 ALJ Decision"). In so doing, the ALJ ruled the 1988 ALJ Decision was not entitled to collateral estoppel effect because of our 2000 decision in *Island Creek Coal Co. v. Compton*, 211 F.3d 203 (4th Cir. 2000). *See* 2001 ALJ Decision at 14. In *Compton*, we ruled that an ALJ must consider all of the relevant evidence in assessing whether a coal miner suffers from pneumoconiosis. Pursuant to 20 C.F.R. § 718.202(a)'s four subsections, a miner's pneumoconiosis may be established in four ways: (1) chest X-rays; (2) biopsy or autopsy results; (3) certain regulatory presumptions (not relevant here); and (4) a physician's opinion based on medical evidence. Our *Compton* decision invalidated the BRB's practice of allowing an ALJ to find that a coal miner suffers from pneumoconiosis by relying on evidence falling under one of the four subsections of § 718.202(a) (such as chest X-rays), while ignoring contrary evidence belonging to one of the other three subsections (such as physicians' opinions). *See* 211 F.3d at 211. That practice, as Judge Wilkins explained in *Compton*, contradicted 30 U.S.C. § 923(b)'s statutory mandate that an ALJ must consider "all relevant evidence" in making a pneumoconiosis finding. *Id.*

In this case, the ALJ concluded, in December 2001, that the pre-*Compton* 1988 ALJ Decision was not entitled to any collateral estoppel effect, and that Mrs. Collins therefore could not rely on it in establishing Mr. Collins's pneumoconiosis. The ALJ then considered anew the evidence concerning Mr. Collins's respiratory condition, and he ruled, contrary to the 1988 ALJ Decision, that Mr. Collins had never suffered from pneumoconiosis (and thus that his death had not been hastened by the disease).

Mrs. Collins then appealed the 2001 ALJ Decision to the BRB. By its Decision and Order of January 28, 2003, the BRB affirmed the 2001 ALJ Decision's collateral estoppel ruling, but it vacated the ALJ's no-pneumoconiosis finding and remanded for the ALJ to re-weigh the evidence. *Collins v. Pond Creek Mining Co.*, 22 Black Lung Rep. (MB) 1-229 (BRB 2003) (the "2003 BRB Decision"). On remand, the ALJ again found that Mr. Collins had never suffered from pneumoconiosis. *Collins v. Pond Creek Mining Co.*, No. 1998-BLA-1295 (Aug. 16, 2004) (the "2004 ALJ Decision"). Additionally, the ALJ determined that, even assuming the existence of pneumoconi-

osis, there was insufficient evidence that the disease hastened Mr. Collins's death. On Mrs. Collins's appeal from the 2004 ALJ Decision, the BRB reiterated its earlier position that Mrs. Collins was not entitled to rely on the doctrine of collateral estoppel, and it affirmed the ALJ's findings of no pneumoconiosis and lack of causation. *Collins v. Pond Creek Mining Co.*, BRB No. 04-0899 BLA (June 15, 2005) (the "2005 BRB Decision"). Mrs. Collins has now petitioned for review of the 2005 BRB Decision, and we possess jurisdiction pursuant to 33 U.S.C. § 921(c).

## II.

We review an ALJ decision that has been affirmed by the BRB to determine whether it is in accordance with the law and supported by substantial evidence. *Island Creek Coal Co. v. Compton*, 211 F.3d 203, 207-08 (4th Cir. 2000); *Piney Mountain Coal Co. v. Mays*, 176 F.3d 753, 756 (4th Cir. 1999). In so doing, we confine our review to the grounds upon which the BRB based its decision. *See Grigg v. Dir., OWCP*, 28 F.3d 416, 418 (4th Cir. 1994). As always, we review de novo the BRB's conclusions of law. *Milburn Colliery Co. v. Hicks*, 138 F.3d 524, 528 (4th Cir. 1998).

## III.

Mrs. Collins's principal contention in this proceeding is that the BRB erred in failing to accord collateral estoppel effect to the ruling, made in the 1988 ALJ Decision, that Mr. Collins had developed pneumoconiosis through his coal mine employment.[3] "Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana v. United States*, 440 U.S. 147, 153 (1979). And, as we have observed, findings of fact made during administrative adjudications are to be accorded the same collateral

---

[3]The Director of the Office of Workers' Compensation Programs, as a Respondent in this proceeding, supports Mrs. Collins's position the 1988 ALJ Decision precludes Pond Creek from relitigating whether Mr. Collins had developed pneumoconiosis. It has filed a brief in this proceeding supporting that proposition.

estoppel effect they would receive if made by a court. *See Jones v. SEC*, 115 F.3d 1173, 1178 (4th Cir. 1997). Because Mrs. Collins is in the position of a plaintiff who was not a party to the 1988 ALJ proceeding, we must assess not only whether the general requirements for collateral estoppel have been established, but also whether application of the doctrine of "offensive nonmutual collateral estoppel" might be unfair to Pond Creek in this case.[4]

## A.

A party seeking to rely on the doctrine of collateral estoppel is obliged to establish five elements: (1) that "the issue sought to be precluded is identical to one previously litigated" ("element one"); (2) that the issue was actually determined in the prior proceeding ("element two"); (3) that the issue's determination was "a critical and necessary part of the decision in the prior proceeding" ("element three"); (4) that the prior judgment is final and valid ("element four"); and (5) that the party against whom collateral estoppel is asserted "had a full and fair opportunity to litigate the issue in the previous forum" ("element five"). *Sedlack v. Braswell Servs. Group, Inc.*, 134 F.3d 219, 224 (4th Cir. 1998). The doctrine of collateral estoppel does not bar the relitigation of factual issues "where the party against whom the doctrine is invoked had a heavier burden of persuasion on that issue in the first action than he does in the second, or where his adversary has a heavier burden in the second action than he did in the first." *Newport News Shipbldg. & Dry Dock Co. v. Dir., OWCP*, 583 F.2d 1273, 1279 (4th Cir. 1978). Additionally, the doctrine of collateral estoppel does not apply to a legal ruling if there has been a "major" change in the governing law since the prior adjudication that "could render [the] previous determination inconsistent with prevailing doctrine." *See Montana v. United States*, 440 U.S. at 161 (citing *Comm'r v. Sunnen*, 333 U.S. 591, 599 (1948)).

---

[4]Collateral estoppel is "offensive" when a plaintiff seeks to "foreclose the defendant from litigating an issue the defendant has previously litigated unsuccessfully," and it is "nonmutual" when the party seeking to rely on the earlier ruling was not a party to the earlier proceeding and is not in privity with a party. *See In re: Microsoft Corp. Antitrust Litig.*, 355 F.3d 322, 326 (4th Cir. 2004) (internal quotation marks omitted).

In this proceeding, Mrs. Collins seeks to rely on the 1988 ALJ Decision to establish that Mr. Collins developed pneumoconiosis as a result of his thirty-six years in the coal mines. Without question, the issue of whether Mr. Collins developed and suffered from pneumoconiosis as a result of his work in the mines was actually determined in the 1988 proceeding (element two), and that determination was critical and necessary to the 1988 ALJ Decision (element three). Absent a finding of pneumoconiosis, Mr. Collins could not have been awarded black lung benefits under the Act in 1988. Moreover, there is no suggestion that the 1988 ALJ Decision is invalid (element four), or that Pond Creek did not have a full and fair opportunity to litigate the issue (element five). Accordingly, Mrs. Collins has plainly established four of the five essential elements for asserting collateral estoppel with respect to the 1988 ALJ Decision's pneumoconiosis finding. We must further assess, however, whether our *Compton* decision in 2000 created a difference in burdens such that "the issue sought to be precluded is [not] identical to the one previously litigated" and element one is not met. *See Sedlack*, 134 F.3d at 224; *see also Newport News Shipbldg.*, 583 F.2d at 1279. Moreover, if the five essential elements of collateral estoppel have been established by Mrs. Collins, we must determine whether the 1988 ALJ Decision's pneumoconiosis finding has been rendered obsolete by a "major" change in the controlling legal principles, as a result of *Compton*. *See Montana v. United States*, 440 U.S. at 161.

1.

The BRB concluded that the 1988 ALJ Decision's pneumoconiosis ruling was not entitled to preclusive effect under the doctrine of collateral estoppel "because the change in the law in [*Island Creek Coal Co. v. Compton*, 211 F.3d 203 (4th Cir. 2000),] affects the factfinder's weighing of the evidence," and the issue of whether Mr. Collins had pneumoconiosis was therefore "not identical to the one previously litigated." 2003 BRB Decision, 22 Black Lung Rep. (MB) at 1-233. As spelled out above, in *Compton* we invalidated the BRB's practice of allowing ALJs to find the existence of pneumoconiosis by looking exclusively at evidence within one of 20 C.F.R. § 718.202(a)'s four subsections, while ignoring contrary evidence belonging to one of the other three subsections. *See* 211 F.3d at 211. In so ruling, however, we left unaltered the legal definition of pneumoco-

niosis,[5] the methods by which a claimant may establish the existence of pneumoconiosis, and the statutory requirement that a claimant must prove that the coal miner developed pneumoconiosis by a preponderance of the evidence. *See id.* at 209-10.

This case, then, is unlike those in which a difference in burdens has rendered the doctrine of collateral estoppel inapplicable. In *Newport News Shipbuilding*, for example, we declined to give preclusive effect to a prior administrative ruling that the claimant's injury was not work-related. *See* 583 F.2d at 1278-79. We observed that, in the earlier proceeding, the claimant was obliged to establish "by 'a preponderance of evidence' that his injury arose out of and in the course of his employment," while, in the later proceeding, uncertainty concerning work-relatedness was to be resolved in the claimant's favor. *See id.* (citing cases); *see also Freeman United Coal Mining Co. v. OWCP*, 20 F.3d 289, 294-95 (7th Cir. 1994) (declining to accord collateral estoppel effect to determination in state proceedings that claimant was not permanently disabled; where claimant bore burden of establishing disability in state proceedings, but was entitled to presumption of disability in federal proceedings).

The *Compton* decision, however, left the burden of proof in black lung proceedings unchanged. Prior to *Compton*, a black lung claimant was obliged to establish, by a preponderance of the evidence and through one of the four methods spelled out in § 718.202(a)'s subsections, that the coal miner had developed pneumoconiosis as a result of his work in the mines. *See Beatty v. Danri Corp. & Triangle Enters.*, 16 Black Lung Rep. (MB) 1-11, 1-13 (BRB 1991). And, in assessing whether that burden had been carried, the ALJ was permitted to consider whether evidence of pneumoconiosis relating to one of the four § 718.202(a) subsections (such as positive chest x-rays) was discredited by contrary evidence of a different sort (such as negative physicians' reports). *See Mabe v. Bishop Coal Co.*, 9 Black Lung Rep. (MB) 1-67, 1-68 (BRB 1986). That burden-of-proof regime was

---

[5]As we have recognized, "the term 'pneumoconiosis' has both a medical and a legal definition." *Compton*, 211 F.3d at 210. "Legal pneumoconiosis is a much broader category of disease" than medical pneumoconiosis, which is "a particular disease of the lung generally characterized by certain opacities appearing on a chest x-ray." *Id.*

left in place by *Compton*, but an ALJ is now obliged (rather than simply permitted) to consider any relevant countervailing evidence, regardless of its form. Mrs. Collins thus bears the same burden (a preponderance of the evidence) to establish the same fact (that Mr. Collins suffered from pneumoconiosis as a result of his thirty-six years working in the coal mines) in the same manner (through one of the four methods prescribed by the § 718.202(a) subsections) as Mr. Collins bore in the 1988 ALJ proceeding. In these circumstances, the issue Mrs. Collins seeks to establish though collateral estoppel — that Mr. Collins suffered from pneumoconiosis as a result of his work in the mines — is identical to the issue determined in the 1988 ALJ Decision. And the BRB, in its 2005 Decision, erred in reaching a contrary conclusion.

2.

In declining to accord preclusive collateral estoppel effect to the 1988 ALJ Decision, the BRB also relied on its unpublished 2001 decision in *Howard v. Valley Camp Coal Co.*, BRB No. 00-1034 (Aug. 22, 2001) (unpublished), which we affirmed by unpublished decision in 2004, *Howard v. Valley Camp Coal Co.*, 94 F. App'x 170 (4th Cir. 2004) (per curiam). Pursuant to our Local Rule 36(c), of course, we ordinarily do not accord precedential value to our unpublished decisions. Indeed, those decisions have no precedential value, and they are "entitled only to the weight they generate by the persuasiveness of their reasoning." *Hupman v. Cook*, 640 F.2d 497, 501 & n.7 (4th Cir. 1981). Thus, we must consider whether the reasoning of our unpublished decision in *Howard* persuades us that the 2005 BRB Decision's collateral estoppel ruling should be affirmed.

In *Howard*, a coal miner's widow seeking survivor's benefits under the Black Lung Act sought to rely on the preclusive effect of a pre-*Compton* award of black lung benefits made to her late husband, and establish that he had developed pneumoconiosis as a result of his work in the coal mines. *See* 94 F. App'x at 172. Her claim as a widow was denied by the ALJ, and that denial was affirmed by the BRB. *Id.* We denied Mrs. Howard's petition for review, concluding, inter alia, that the BRB was correct in not according preclusive effect to the pre-*Compton* pneumoconiosis determination. *Id.* at 173. The analysis of that point in *Howard* is confined to a single conclusory sentence,

however, and relies on *Sunnen*. *See id.* (citing *Sunnen* and concluding that "the Board . . . correctly determined that the change in interpretation of the regulations for proving pneumoconiosis, which was effected by this court's decision in *Compton*, was sufficiently significant to warrant refusal to apply issue preclusion based on a determination of pneumoconiosis made under the pre-*Compton* regime").

By its *Sunnen* decision, the Supreme Court concluded that a taxpayer was not entitled to rely on the collateral estoppel effect of a prior Tax Court judgment to establish, for all time, that certain types of assignments were not taxable to him, notwithstanding that the substantive law had changed since the prior judgment had been rendered. *See* 333 U.S. at 596-97. In so ruling, the Court observed that "collateral estoppel is a doctrine capable of being applied so as to avoid an undue disparity in the impact of income tax liability." *Id.* at 599. And the Court explained that the purpose of collateral estoppel — preventing "repetitious lawsuits over matters which have once been decided and which have remained substantially static, factually and legally" — did not justify creating "vested rights in decisions that have become obsolete or erroneous with time, thereby causing inequities among taxpayers." *Id.* Accordingly, the Court held that "a judicial declaration intervening between . . . two proceedings may so change the legal atmosphere as to render the rule of collateral estoppel inapplicable." *Id.* at 600. The Court explained, however, that "where a question of fact essential to the judgment is actually litigated and determined in the first . . . proceeding, the parties are bound by that determination in a subsequent proceeding." *Id.* at 601.

*Sunnen* thus holds that a party is not entitled to rely on the doctrine of collateral estoppel to establish a legal conclusion when the underlying substantive law has materially changed; it does not, however, authorize a party to revisit a question of fact that has been previously determined. *See* 333 U.S. at 599-601; *see also Montana v. United States*, 440 U.S. at 161 (explaining that, where there have been no "major changes" in underlying substantive law, "reliance on [*Sunnen*] is misplaced"); *cf. Morgan v. Dep't of Energy*, 424 F.3d 1271, 1276 (Fed. Cir. 2005) ("Extending the [*Sunnen*] exception to collateral estoppel to the instant case, where a party is seeking relitigation of the legal consequence of the very same set of facts as were previously adjudicated, would effectively gut the doctrine of collateral estop-

pel."). Rather, a party seeking to avoid the collateral estoppel effect of an earlier factual determination is obliged to make one of two showings: that "the party against whom the doctrine is invoked had a heavier burden of persuasion on that issue in the first action than he does in the second, or [that] his adversary has a heavier burden in the second action." *See Newport News Shipbldg.*, 583 F.2d at 1279. And, as explained above, Mr. Collins, in the 1988 ALJ proceeding, bore the same burden of proof (preponderance of the evidence) to establish the same fact (that he had developed pneumoconiosis, as defined in the Act, through his work in the coal mines) in the same manner (through one of the four methods described in § 718.202(a)) as Mrs. Collins bears in the current proceeding. In these circumstances, our unpublished decision in *Howard* is not persuasive, and we will not accord it precedential value.

Mrs. Collins has thus satisfied the general requirements for collateral estoppel, and the ALJ and the BRB erred in ruling to the contrary.

## B.

Additionally, because Mrs. Collins is in the position of a plaintiff who was a non-party to the 1988 ALJ proceeding, we are obliged to assess whether allowing her to rely on the doctrine of offensive non-mutual collateral estoppel might be unfair to Pond Creek. Pursuant to the Supreme Court's explanation of that doctrine in *Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979), we are to analyze four nonexclusive factors in that regard: (1) whether Mrs. Collins could easily have joined in the earlier proceeding, (2) whether Pond Creek "had an incentive in the prior action to have defended the action fully and vigorously"; (3) whether Pond Creek has ever obtained a ruling that Mr. Collins did not suffer from pneumoconiosis; and (4) whether procedural opportunities are available to Pond Creek in the present proceeding that were unavailable to it in the 1988 proceeding. *See In re: Microsoft Corp. Antitrust Litig.*, 355 F.3d 322, 326 (4th Cir. 2004) (citing *Parklane Hosiery*, 439 U.S. at 331-32).

1.

An assessment of each of the four *Parklane Hosiery* factors discloses that no unfairness will result to Pond Creek from allowing Mrs. Collins to rely on the 1988 ALJ Decision. Mrs. Collins was unable to join Mr. Collins's 1988 claim for black lung benefits, as spouses of living miners with pneumoconiosis are not entitled to seek benefits under the Act. Moreover, Pond Creek had a strong incentive to fully and vigorously defend the 1988 ALJ proceeding. The Black Lung Act provides that a qualifying widow shall receive benefits "at the rate the deceased miner would have received such benefits if he were totally disabled," *see* 30 U.S.C. § 922(a)(2), and Pond Creek had the same incentive to defend Mr. Collins's claim for living miner benefits as it does to defend Mrs. Collins's claim for survivor's benefits. Additionally, there has been no finding since the 1988 ALJ Decision that Mr. Collins did not have pneumoconiosis.[6] Finally, there are no procedural opportunities currently available to Pond Creek that were unavailable to it during the 1988 ALJ proceedings (which Pond Creek chose not to appeal).

2.

Without specifically mentioning the *Parklane Hosiery* decision or its factors, Pond Creek offers us two reasons why, in its view, a widow seeking survivor's benefits may not, as a general matter, rely on the collateral estoppel effect of an earlier pneumoconiosis finding in favor of a living miner. First, seeking to rely on our decision in *Lisa Lee Mines v. Director, OWPC*, 86 F.3d 1358 (4th Cir. 1995) (en banc), Pond Creek asserts that "the traditional principles of finality,

---

[6]Although Mr. Collins filed a claim for black lung benefits under the Act which was denied in 1981, that denial is immaterial to the present proceeding because it occurred prior to his 1988 award of benefits. As we have observed, a miner may develop pneumoconiosis, or his existing pneumoconiosis might progress to the point of causing a total disability, after he has been initially denied black lung benefits. *See Lisa Lee Mines v. Dir., OWPC*, 86 F.3d 1358, 1362 (4th Cir. 1996) (en banc). Accordingly, the fact that Mr. Collins was denied black lung benefits in 1981 in no way suggests that it would be unfair to Pond Creek for Mrs. Collins to rely on the collateral estoppel effect of the 1988 ALJ Decision.

*res judicata*, collateral estoppel, and 'law of the case' are not applicable to an issue which is an element of entitlement in black lung cases." Respondent Pond Creek's Br. at 14. In *Lisa Lee Mines*, we concluded that, because a miner's condition may worsen after he has been denied black lung benefits, a prior denial of benefits does not preclude him from initiating a subsequent claim for benefits under the Act. *See* 86 F.3d at 1362. Pond Creek, however, has not pointed us to any evidence that a miner who has developed pneumoconiosis may somehow be cured of or recover from that disease, and *Lisa Lee Mines* is therefore inapplicable. Furthermore, we did not hold in *Lisa Lee Mines* that principles of finality have no place in black lung proceedings, and we decline Pond Creek's invitation to transform the already burdensome process of black lung litigation into a Sisyphean endeavor.[7]

Second, Pond Creek contends that, due to the potential availability of some post-mortem pathology, a widow should not be permitted to rely on the collateral estoppel effect of a prior pneumoconiosis determination. We should not pause over the absence of post-mortem pathology in the present case, Pond Creek maintains, because, the "[c]laimant alone makes the decision to obtain or not obtain an autopsy." Respondent Pond Creek's Br. at 15 n.4. In Pond Creek's view, allowing a coal miner's widow to rely on the collateral estoppel effect of a living miner's benefits award would "work a manifest injustice," by permitting the widow to "decline an autopsy and urge the application of 'collateral estoppel,' [thereby depriving] the liable party of the due process opportunity to conclusively confirm the presence or absence of pneumoconiosis." *Id.*

Pond Creek's concern that a coal miner's widow might "decline an autopsy and urge the application of 'collateral estoppel'" ignores the fact that a widow cannot succeed in her claim for survivor's benefits without further establishing that pneumoconiosis hastened her husband's death. *See* 20 C.F.R. § 718.205(c)(2) & (5). In so doing, she may desire or need an autopsy. And, of course, if that autopsy conclu-

---

[7]In Greek mythology, Sisyphus was compelled to spend his afterlife eternally pushing a giant boulder to the top of a steep hill, only to have the boulder escape and roll back to the bottom.

sively confirmed the absence of pneumoconiosis, it would also show that pneumoconiosis did not hasten the miner's death.[8]

In these circumstances, we agree with the Seventh Circuit that a coal miner's widow seeking survivor's benefits under the Black Lung Act may generally rely on the doctrine of offensive nonmutual collateral estoppel to establish that, as a result of his work in the mines, her deceased husband had developed pneumoconiosis. *See Ziegler Coal Co. v. Dir., OWCP*, 312 F.3d 332, 334 (7th Cir. 2002). And, having carefully examined the four *Parklane Hosiery* factors and Pond Creek's contentions, allowing Mrs. Collins to rely on offensive nonmutual collateral estoppel would not be unfair to Pond Creek. Accordingly, the ALJ and the BRB erred in permitting Pond Creek to relitigate, in the widow's proceedings for benefits, the issue of whether Mr. Collins suffered from pneumoconiosis as a result of his thirty-six years of coal mine employment.[9]

IV.

Finally, in order to succeed in her claim for survivor's benefits, Mrs. Collins is obliged to show that Mr. Collins's death was hastened by pneumoconiosis. *See* 20 C.F.R. § 718.205(c)(2) & (5). Notably, the ALJ has determined — in a causation ruling affirmed by the BRB — that even assuming Mrs. Collins proved the existence of pneumoconiosis, she failed to establish that the disease hastened her husband's death. If it were supported by substantial evidence, this causation ruling would be a sufficient alternative ground on which to

---

[8]Pond Creek further suggests that operators have a due process right to "confirm the presence or absence of pneumoconiosis" through an autopsy. Respondent Pond Creek's Br. at 15 n.4. In the same breath, however, Pond Creek acknowledges that responsible operators have no right to require such autopsies to be performed. *See id.* Pond Creek has not asserted that the current black lung claim procedures are constitutionally infirm because they do not mandate that autopsies be performed in all survivor's benefits proceedings.

[9]Because the 1988 ALJ Decision precludes relitigation of whether Mr. Collins developed pneumoconiosis, we need not reach and address the question of whether the finding of no pneumoconiosis, as made in the 2004 ALJ Decision, is supported by substantial evidence.

deny Mrs. Collins's petition for review. In view of the reason on which the BRB affirmed the ALJ's ruling, however, we cannot uphold the BRB's decision.

In rendering his causation ruling, the ALJ rejected the opinions of two physicians for Mrs. Collins as unreasoned and undocumented, and instead relied on the views of seven physicians for Pond Creek — each of whom had opined that Mr. Collins did not suffer from pneumoconiosis at all (much less die due to such disease).[10] After criticizing the opinions of Mrs. Collins's physicians as "cursory," the ALJ himself cursorily explained his reliance on Pond Creek's physicians, as follows:

> In contrast to the cursory opinions of [Mrs. Collins's physicians], [Pond Creek's physicians] provided better reasoned and documented opinions regarding the "death due to pneumoconiosis" issue. Moreover, many of the foregoing physicians explained why their opinions regarding the absence of a role of pneumoconiosis in the miner's death would not change, even assuming the presence of radiological evidence of the disease.

2004 ALJ Decision at 14. On appeal to the BRB, Mrs. Collins invoked our decision in *Scott v. Mason Coal Co.*, 289 F.3d 263 (4th Cir. 2002), for the proposition that, since she had established the existence of pneumoconiosis, it was improper for the ALJ to rely as he did on the causation opinions of physicians who had failed to diagnose the disease. *See Scott*, 289 F.3d at 269 (holding that, in wake of finding of pneumoconiosis, ALJ must "provide[ ] specific and persuasive reasons for" relying on causation opinions of physicians who have not diagnosed pneumoconiosis and, even then, can give such opinions "little weight, at the most"). The BRB deemed *Scott* inapposite and affirmed the ALJ's causation ruling, concluding that "because the [ALJ] did not find the existence of pneumoconiosis established in this case, he could properly rely on the causation opinions of physi-

---

[10]Pond Creek's physicians each rejected a diagnosis of medical pneumoconiosis, as well as the existence of the more broadly defined legal pneumoconiosis. *See supra* note 5.

cians who did not diagnose pneumoconiosis." 2005 BRB Decision at 6.

Of course, the BRB's decision rested squarely on the ALJ's finding of no pneumoconiosis — a finding that we have rejected herein on the ground that Mrs. Collins established the presence of pneumoconiosis by collateral estoppel. Upon the proper finding of pneumoconiosis, the BRB should have assessed the ALJ's causation ruling under the standards outlined by our decision in *Scott*. In that case, the ALJ found that although Scott (a living miner) suffered from pneumoconiosis, he had failed to show that any total disability was caused at least in part by that disease. *See Scott*, 289 F.3d at 268. For that ruling, the ALJ rejected the causation analysis of a physician who had also opined that Scott was disabled by pneumoconiosis, and instead relied on the contrary opinions of two physicians who had not diagnosed Scott with pneumoconiosis at all. *See id.* at 267-68. The BRB approved the ALJ's reliance on the latter physicians, "because both doctors stated that their [causation] opinion would not change if Scott had pneumoconiosis and because both doctors' opinions were clearly stated, fully documented, and highly persuasive." *Id.* at 268.

We, however, reversed the BRB's decision affirming the ALJ's causation ruling as not supported by substantial evidence. Writing for the Court, Judge Widener explained that the ALJ could only give weight to the causation opinions of the physicians who had not diagnosed pneumoconiosis "if he provided specific and persuasive reasons for doing so, and those opinions could carry little weight, at the most." *Scott*, 289 F.3d at 269 (citing *Toler v. E. Associated Coal Co.*, 43 F.3d 109 (4th Cir. 1995)). In the circumstances of Scott's case — which seem to compare closely to those presented here — the ALJ's reasons for crediting the causation opinions of the non-diagnosing physicians were regarded to be insufficient, and the ALJ's exclusive reliance on those opinions was deemed to be erroneous. *See id.* We were particularly concerned with the ALJ's wholesale rejection of the diagnosing physician's causation opinion and corresponding over-reliance on the non-diagnosing physicians' contrary views. In the compelling words of Judge Widener:

> Two opinions that may hold no weight, or at most may hold the little weight allowed by *Toler*, cannot suffice as substan-

tial evidence to support the ALJ determination that Scott's [disability] was not caused at least in part by pneumoconiosis. This is especially true when one causation opinion based on the proper diagnosis, even a poorly documented one, links the disability to pneumoconiosis.

*Id.* at 270. Although we remanded with directions to award benefits in *Scott*, we see the appropriate course here as a remand for further consideration of the causation issue. In that regard, the BRB will have the first opportunity to assess whether the ALJ's causation ruling meets the rigorous standards outlined in *Scott*.

V.

Pursuant to the foregoing, we grant Mrs. Collins's petition for review, vacate the 2005 BRB Decision, and remand for such other and further proceedings as may be appropriate.

*PETITION FOR REVIEW GRANTED;*
*ORDER VACATED AND REMANDED*

SHEDD, Circuit Judge, dissenting:

The Administrative Law Judge ("ALJ"), affirmed by the Benefits Review Board ("BRB"), denied Mrs. Collins' claim for black lung survivor's benefits based on two alternative, independent factual findings. First, the ALJ found that Mrs. Collins failed to prove that Mr. Collins suffered from pneumoconiosis. In making this finding, the ALJ rejected Mrs. Collins' assertion that Pond Creek Mining Company should be collaterally estopped by Mr. Collins' black lung living miner determination from relitigating the question of whether Mr. Collins suffered from pneumoconiosis. Second, the ALJ found that even assuming that Mr. Collins suffered from pneumoconiosis, Mrs. Collins nonetheless failed to prove that his death was due to pneumoconiosis. In my view, both of the ALJ's factual findings are supported by substantial evidence, and either is independently dispositive of Mrs. Collins' claim. Moreover, the ALJ's decision not to apply collateral estoppel — an issue that relates only to the first of the two alternative factual findings — is correct under the circumstances of this

case. Accordingly, I dissent from the majority's decision to grant the petition for review.

I

We review Mrs. Collins' claim to determine whether substantial evidence supports the ALJ's factual findings and whether the legal conclusions of the BRB and the ALJ are rational and consistent with applicable law. *Bill Branch Coal Corp. v. Sparks*, 213 F.3d 186, 190 (4th Cir. 2000). To succeed on her claim, Mrs. Collins bears the burden of proving by a preponderance of the evidence that (1) Mr. Collins suffered from pneumoconiosis; (2) the pneumoconiosis arose at least in part out of coal mine employment; and (3) Mr. Collins' death was due to pneumoconiosis. *Id.* Generally, pursuant to 20 C.F.R. § 718.202(a), Mrs. Collins may establish the existence of pneumoconiosis by means of (1) chest x-rays, (2) biopsy or autopsy evidence, (3) invocation of the presumptions at 20 C.F.R. §§ 718.304-718.306, or (4) medical opinion evidence. She may establish that Mr. Collins' death was due to pneumoconiosis by proving that pneumoconiosis actually hastened his death. *Sparks*, 213 F.3d at 190 (citations omitted).

II

Evidence in the record indicates that Mr. Collins was a coal miner, as well as a pack-a-day cigarette smoker, for over 40 years. Approximately one year before his death in 1997, Mr. Collins' heart began to fail. In September 1997, Mr. Collins went into full cardiopulmonary arrest; he was resuscitated and transported to the hospital, where he was placed on a ventilator. Mr. Collins remained in the hospital two weeks after his cardiac arrest. A day after being discharged from the hospital, Mr. Collins again suffered an acute cardiac arrest and died at home. No autopsy was performed.

Shortly thereafter, Mrs. Collins filed her claim for survivor's benefits. Proper consideration of the issues involved in Mrs. Collins' claim requires us to examine Mr. Collins' claim for living miner benefits as well as our decision in *Island Creek Coal Company v. Compton*, 211 F.3d 203 (4th Cir. 2000).

A.

In 1988, an ALJ awarded living miner benefits to Mr. Collins, finding that he suffered from pneumoconiosis. Considering the four methods by which a claimant may establish the existence of pneumoconiosis, the ALJ concluded that Mr. Collins' proof failed with respect to each of the first three methods. Specifically, although the ALJ recognized that there were differing opinions concerning the chest x-rays, he accorded greater weight to the opinions of two B-readers who read Mr. Collins' x-rays and found no evidence of pneumoconiosis. The ALJ then found that there was no biopsy or autopsy evidence in the record and that the presumptions were not applicable.

The ALJ further found, however, that Mr. Collins established the presence of pneumoconiosis under the fourth method. Although one physician had opined that Mr. Collins did not suffer from pneumoconiosis, the ALJ accorded greater weight to the opinions of two other physicians who had reached contrary conclusions. The ALJ's stated analysis for finding pneumoconiosis — *i.e.*, "through physician's reports as provided in Section 718.202(a)(4)," J.A. 19 — suggests that he considered each method of proof individually without regard for the others. This decision was not appealed.

B.

In 2000, before Mrs. Collins' claim for survivor's benefits was decided, we decided *Compton*, which involved a claim for living miner's benefits. The ALJ in *Compton* awarded benefits, finding (in pertinent part) that although the miner had not established pneumoconiosis by chest x-rays, he did establish pneumoconiosis by physician opinion evidence. There was no biopsy or autopsy evidence, and the presumptions described in § 718.202(a)(3) were not applicable.

The BRB affirmed the ALJ decision, and the company petitioned for review, arguing in part that the ALJ "erred in his method of weighing the evidence" concerning the issue of whether the miner suffered from pneumoconiosis. 211 F.3d at 208. Elaborating on this argument, the company contended that the ALJ "merely weighed the evidence within each subsection [of § 718.202(a)] . . . to determine whether a preponderance of that type of evidence established pneu-

moconiosis." 211 F.3d at 208. Instead of this analysis, the company argued that "the proper method is to weigh the different types of evidence together to determine whether a preponderance of *all* of the evidence establishes the existence of pneumoconiosis." *Id.*

We noted that the ALJ "did in fact evaluate the evidence within subsections (a)(1) and (a)(4) of § 718.202 to determine whether either type of evidence established pneumoconiosis, but did not weigh the X-ray evidence with the medical opinion evidence." 211 F.3d at 208. We further noted that the BRB "approved of this practice," ruling "that as long as the evidence relevant to one subsection of § 718.202(a) supports a finding of pneumoconiosis, the rest of the evidence need not be considered." 211 F.3d at 208. We then expressly rejected the BRB's analysis. Looking to 30 U.S.C. § 923(b), which governs the evidence required to establish a claim for black lung benefits, we held that "all relevant evidence is to be considered together rather than merely within discrete subsections of § 718.202(a)." 211 F.3d at 208. Applying this holding, we vacated the award of benefits and remanded the case with instructions for the ALJ to "weigh the x-ray evidence with the physicians' opinions to determine whether [the miner] established the existence of pneumoconiosis by a preponderance of all of the evidence." 211 F.3d at 211; *see also Consolidation Coal Co. v. Held*, 314 F.3d 184 (4th Cir. 2002) (applying *Compton* and vacating award of benefits based on the ALJ's failure to properly weigh all of the evidence together).

## C.

In 2004, while Mrs. Collins' claim was still pending, we decided *Howard v. Valley Camp Coal Company*, 94 Fed. Appx. 170 (4th Cir. 2004) (unpublished), which involved a claim for survivor benefits. Because the living miner in *Howard* had successfully obtained benefits (in a pre-*Compton* claim), the miner's surviving spouse asserted that collateral estoppel precluded the company from relitigating the issue of whether the miner suffered from pneumoconiosis. Although the ALJ held that the company was collaterally estopped, the BRB reversed based on the analytical change effected by *Compton*. As the BRB explained:

> At the time of . . . the miner's claim, evidence sufficient to establish pneumoconiosis under one of the four methods set

out at 20 C.F.R. section 718.202(a)(1)-(4) obviated the need to do so under any of the other methods. *See Dixon v. North Camp Coal Co.*, 8 BLR 1-344 (1985). However, subsequent to the issuance of the award of benefits in the miner's claim, the Fourth Circuit held that although Section 718.202(a) enumerates four distinct methods of establishing pneumoconiosis, all types of relevant evidence must be weighed together to determine whether a miner suffers from the disease. *See Island Creek Coal Co. v. Compton*, 211 F.3d 203 (4th Cir. 2000). . . . In light of the change in law enunciated in *Compton*, which overruled the Board's holding in *Dixon*, the issue of whether the existence of pneumoconiosis has been established pursuant to Section 718.202(a) . . . is not identical to the one previously litigated and actually determined in the miner's claim.

*Howard*, 94 Fed. Appx. at 172 (quoting the BRB).

We affirmed the BRB. Citing *C.I.R. v. Sunnen*, 333 U.S. 591, 600 (1948), for the proposition that "a judicial declaration intervening between . . . two proceedings may so change the legal atmosphere as to render the rule of collateral estoppel inapplicable," we concluded that the BRB "correctly determined that the change in interpretation of the regulations for proving pneumoconiosis, which was effected by this court's decision in *Compton*, was sufficiently significant to warrant refusal to apply issue preclusion based on a determination of pneumoconiosis made under the pre-*Compton* regime." *Howard*, 94 Fed. Appx. at 173.

## III

Against this backdrop, the ALJ denied Mrs. Collins' claim for survivor's benefits based on two alternative grounds: (1) her failure to prove that Mr. Collins suffered from pneumoconiosis and (2) her failure in any event to prove that his death was due to pneumoconiosis. The BRB affirmed on both grounds.

## A.

Concerning the pneumoconiosis finding, the ALJ and the BRB first rejected Mrs. Collins' contention that Pond Creek should be collater-

ally estopped by Mr. Collins' living miner proceeding from relitigat-
ing whether he suffered from pneumoconiosis. Although both the ALJ
and the BRB recognized that collateral estoppel is generally applica-
ble in black lung survivor's proceedings, they found the doctrine to
be inapplicable because of our intervening decision in *Compton* and
the BRB's decision in *Howard*. As the BRB explained:

> [B]ecause the change in the law in *Compton* affects the fact-
> finder's weighing of the evidence, the issue [of pneumoco-
> niosis] is not identical to the one previously litigated.
>
> . . .
>
> [U]nder the facts of the present case the administrative law
> judge properly held that relitigation of the issue of the exis-
> tence of pneumoconiosis was appropriate, since it was not
> clear that the original administrative law judge weighed all
> types of relevant evidence together consistent with *Compton*
> in adjudicating the miner's claim.

J.A. 654, 675-76.

Having determined that collateral estoppel did not apply, the ALJ
then proceeded to consider whether Mrs. Collins proved by a prepon-
derance of the evidence that Mr. Collins suffered from pneumoconio-
sis. After analyzing the x-ray evidence and medical opinion evidence,
the ALJ found that the x-rays were inconclusive and that the better
reasoned and documented medical opinions did not establish the exis-
tence of pneumoconiosis. Pursuant to *Compton*, the ALJ then
weighed the inconclusive x-ray evidence together with the medical
opinion evidence and found that Mrs. Collins failed to establish that
Mr. Collins suffered from pneumoconiosis. As noted, the BRB
affirmed this finding.

### B.

Apart from the foregoing, the ALJ also considered whether Mrs.
Collins proved by a preponderance of the evidence that Mr. Collins'
death was due to pneumoconiosis. In doing so, the ALJ expressly

assumed for the purposes of the analysis that Mrs. Collins had established that Mr. Collins suffered from pneumoconiosis as a result of coal mine employment.[1] The ALJ then rejected as "cursory" the opinions of two doctors who found a causal link between Mr. Collins' death and pneumoconiosis, finding instead that seven other doctors "provided better reasoned and documented opinions regarding the 'death due to pneumoconiosis' issue." J.A. 754. The ALJ further noted that "many of the foregoing physicians explained why their opinions regarding the absence of a role of pneumoconiosis in [Mr. Collins'] death would not change, even assuming the presence of radiological evidence of the disease." J.A. 754. Again, the BRB affirmed this finding.

IV

Mrs. Collins makes two principal arguments in support of her petition for review. First, she argues that the BRB and the ALJ erred by declining to collaterally estop Pond Creek from contesting whether Mr. Collins suffered from pneumoconiosis. Second, she argues that even if collateral estoppel does not apply, the ALJ failed to give proper consideration to the medical evidence concerning the presence of pneumoconiosis and whether pneumoconiosis caused Mr. Collins' death.[2] Pond Creek urges us to deny the petition for review, arguing that the BRB and ALJ properly declined to apply collateral estoppel, and that the ALJ's findings that Mrs. Collins failed to prove the existence of pneumoconiosis or that Mr. Collins' death was due to pneumoconiosis are supported by substantial evidence.

---

[1] Of course, in this posture, the ALJ effectively treated the claim as if Pond Creek was collaterally estopped from contesting whether Mr. Collins suffered from pneumoconiosis.

[2] As the majority notes, the Director agrees with Mrs. Collins on the collateral estoppel issue. However, the Director also points out that the ALJ's "alternative finding" that Mr. Collins' death was not due to pneumoconiosis "raises the question whether any error involving the judge's pneumoconiosis finding is harmless." *Brief for the Federal Respondent*, at 4 n.1. The Director expressly refrained from addressing this issue. *See id.*

A.

In vacating the BRB decision and remanding this case, the majority primarily holds that Pond Creek is collaterally estopped from contesting whether Mr. Collins suffered from pneumoconiosis. I disagree.

"The collateral estoppel doctrine is a judge-made rule," *Ritter v. Mount St. Mary's College*, 814 F.2d 986, 994 (4th Cir. 1987), which provides that "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case," *San Remo Hotel, L.P. v. City and County of San Francisco, Cal.*, 545 U.S. 323, 125 S. Ct. 2491, 2500 n.16 (2005) (citation and quotation marks omitted). When, as here, a litigant attempts to use collateral estoppel offensively, the determination of whether the doctrine should be applied is within the "broad discretion" of the trial court, *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331 (1979), but the court should proceed "cautiously," and "the criteria for foreclosing a defendant from relitigating an issue or fact [should] be applied strictly," *In re Microsoft Corp. Antitrust Litig.*, 355 F.3d 322, 326-27 (4th Cir. 2004). "The burden is on the party asserting collateral estoppel to establish its predicates. . . ." *Allen v. Zurich Ins. Co.*, 667 F.2d 1162, 1166 (4th Cir. 1982).

"Collateral estoppel is subject to exceptions when the circumstances dictate." *Bingaman v. Department of Treas.*, 127 F.3d 1431, 1437 (Fed. Cir. 1997).[3] One example of this principle is that "a judicial declaration intervening between . . . two proceedings may so change the legal atmosphere as to render the rule of collateral estoppel inapplicable." *Sunnen*, 333 U.S. at 600; *see also Montana v. United States*, 440 U.S. 147, 155 (1979) (noting that the "appropriate application of collateral estoppel" may necessitate an inquiry as to

---

[3]Collateral estoppel is related to *res judicata. Parklane Hosiery*, 439 U.S. at 326. We have held that "*[r]es judicata* of administrative decisions is not encrusted with the rigid finality that characterizes the precept in judicial proceedings. Application of the doctrine often serves a useful purpose in preventing relitigation of issues administratively determined, but practical reasons may exist for refusing to apply it." *Grose v. Cohen*, 406 F.2d 823, 824-25 (4th Cir. 1969) (citations omitted).

whether "controlling facts or legal principles have changed significantly" since the first case). Thus, collateral estoppel "will not preclude relitigation of the issue when there is a substantial difference in the procedures employed by the prior and current tribunals, [or] a material intervening change in governing law or the burden of persuasion. . . ." *Duvall v. Attorney Gen. of U.S.*, 436 F.3d 382, 391 (3d Cir. 2006); *see also Stanback v. C.I.R.*, 271 F.2d 514, 519 (4th Cir. 1959) ("The doctrine of collateral estoppel has no place when the ground rules have been so extensively changed that a new question is presented.").

In my view, the BRB correctly recognized that our decision in *Compton* constitutes the type of significant legal change that counsels against the application of collateral estoppel. Although the majority attempts to minimize *Compton* by stating that it "left the burden of proof in black lung proceedings unchanged," this point misses the mark. It is true that *Compton* did not change the *burden of proof* in black lung proceedings, but it is equally true that *Compton* changed the *analytical framework* to be employed by the factfinder who is considering whether the miner suffered from pneumoconiosis. Before *Compton*, ALJs were permitted to do exactly what the ALJ appears to have done with respect to Mr. Collins' living miner claim: *i.e.*, make a finding of pneumoconiosis based only on evidence relevant to any one of the four subsections of § 718.202(a), without considering and weighing evidence relevant to the other subsections. In *Compton*, we expressly rejected this framework, holding instead that "all relevant evidence is to be considered together rather than merely within discrete subsections of § 718.202(a)." 211 F.3d at 208.[4] For this reason, I disagree with the majority's decision to apply collateral estoppel in this case.

---

[4]Although Mrs. Collins and the Director assert that *Compton* actually did not effect a change in the law that existed in 1988, I am not persuaded that they are correct in that assertion, especially in light of the fact that it is contrary to the BRB's interpretation of its own caselaw (*e.g.*, as expressed in the *Howard* proceedings). Moreover, the majority implicitly appears to reject that assertion as well. *See, e.g.*, *Opinion*, at 7 ("in *Compton*, we invalidated the BRB's practice of allowing ALJs to find the existence of pneumoconiosis by looking exclusively at evidence within one of 20 C.F.R. § 718.202(a)'s four subsections, while ignoring contrary evidence belonging to one of the other three subsections").

Without the bar of collateral estoppel, the question of whether Mr. Collins suffered from pneumoconiosis for purposes of Mrs. Collins' case is very much at issue and is subject to our substantial evidence review. I believe that substantial evidence supports the ALJ's finding, made in accord with *Compton*, that Mr. Collins did not suffer from pneumoconiosis. Therefore, Mrs. Collins' claim fails on this ground, and her petition for review should be denied.

B.

As noted, the ALJ found alternatively, based on the express assumption that Mr. Collins suffered from pneumoconiosis, that Mr. Collins' death was not due to pneumoconiosis. Because Mrs. Collins failed in my opinion to prove that Mr. Collins suffered from pneumoconiosis, it is not necessary for me to reach this issue. However, I note that the ALJ's causation finding is supported by substantial evidence and also warrants denial of Mrs. Collins' petition for review.[5]

V

Based on the foregoing, I dissent from the majority's decision. I would deny the petition for review.

---

[5]The majority, relying on *Scott v. Mason Coal Company*, 289 F.3d 263 (4th Cir. 2002), which did not involve collateral estoppel, deems it appropriate to remand this case to the BRB for further consideration of causation. Regardless of whether the majority is correct that *Scott* is applicable in a case such as this where a pneumoconiosis finding is premised solely on collateral estoppel rather than on an ALJ's factual finding, *Scott* does not affect my analysis. I believe that Mrs. Collins failed to prove the presence of pneumoconiosis by either collateral estoppel or the evidence in this case. Accordingly, in my view, there is no inconsistency in the ALJ's alternate finding that Mrs. Collins failed to establish causation.